UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO INDEMNITY COMPANY,
GEICO GENERAL INSURANCE COMPANY, and
GEICO CASUALTY COMPANY,

                                  Plaintiffs,

                                                              **REPORT AND**
          -against-                                           **RECOMMENDATION**
                                                              20-CV-6052-RPK-SJB

SONIA ARMENGOL, M.D., ARMENGOL
MEDICAL, P.C., BEST EMPIRE MEDICAL, P.C., and
ARMEN MEDICAL, P.C.,

                                  Defendants.
-----------------------------------------------------------------X
**BULSARA, United States Magistrate Judge:**

          Plaintiffs Government Employees Insurance Company, GEICO Indemnity

Company, GEICO General Insurance Company, and GEICO Casualty Company

(collectively, "GEICO") commenced this action on December 11, 2020 for fraud and

unjust enrichment, alleging that the defendants engaged in improprieties when

submitting claims under New York's no-fault insurance law.  (Compl. dated Dec. 11,

2020 ("Compl."), Dkt. No. 1).  Defendants Sonia Armengol, M.D., Armengol Medical,

P.C., Best Empire Medical, P.C., and Armen Medical, P.C. (collectively, the "Defaulting

Defendants"), did not appear and the Clerk of Court entered a default against them on

March 29, 2021.  (Clerk's Entries of Default dated Mar. 29, 2021 ("Entries of Default"),

Dkt. Nos. 18–21).  After the Court issued an Order to Show Cause regarding Plaintiffs'

failure to comply with Local Civil Rule 55.2 (*see* Order to Show Cause dated May 24,

2021), GEICO withdrew the motion and filed a second motion for default judgment on

May 25, 2021.  (Notice of Mot. for Default J. dated May 25, 2020 ("Mot."), Dkt. No. 26).

The Honorable Rachel P. Kovner referred the motion for default judgment to the

undersigned for a report and recommendation.  (Order Referring Mot. dated Oct. 25,

2021).  For the reasons described below, the Court respectfully recommends that the

motion be granted in part and the Clerk enter judgment against the Defaulting

Defendants.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Unless otherwise indicated, the following facts are drawn from GEICO's

Complaint.  The GEICO Plaintiffs are Maryland corporations which conduct business

and issue automobile insurance policies in New York.  (Compl. ¶ 11).  Sonia Armengol,

M.D. ("Armengol"), who is licensed to practice medicine in New York, but not New

Jersey, is the owner of defendants Armengol Medical, P.C. ("Armengol Medical"), Best

Empire Medical, P.C. ("Best Empire"), Armen Medical, P.C. ("Armen Medical"), and

Sonia Armengol, M.D. ("Unincorporated Armengol Practice") (collectively, the

"Provider Defendants").  (*Id.* ¶¶ 2, 12–13).  Armengol Medical is a New York

corporation, while Best Empire and Armen Medical are New Jersey corporations not

authorized to provide services in New York state.  (*Id.* ¶¶ 2, 15, 17, 19).  Together, the

Defaulting Defendants are alleged to be involved in schemes to defraud GEICO through

New York's no-fault insurance system.[1]  (*Id.* ¶ 1).

---

[1] Under New York's Comprehensive Motor Vehicle Insurance Reparations Act, N.Y. Ins. Law § 5101, and its associated regulations, 11 N.Y. C.R.R. § 65 *et seq*., GEICO is required to provide GEICO policy holders "Personal Injury Protection Benefits" which includes "up to $50,000.00 per Insured for necessary expenses that are incurred for healthcare goods and services, including medical services."  (*Id.* ¶¶ 27–28).

GEICO alleges that under the no-fault insurance law, a provider is not eligible for reimbursement if it fails to meet any applicable New York licensing requirements. (*Id*. ¶ 31). Among other things, these requirements prohibit individuals without a professional license from owning or controlling healthcare corporations, from fee-splitting with those authorized to practice medicine, and from "paying or accepting kickbacks in exchange for patient referrals." (Compl. ¶¶ 34–36). According to GEICO, the New York Court of Appeals has held that providers that do not comply with these requirements are not eligible to collect no-fault benefits. (*Id*. ¶ 41 (citing *State Farm Mut. Auto. Ins. Co. v. Mallela*, 4 N.Y.3d 313, 320 (2005))). In addition, corporations cannot seek reimbursement for services provided by independent contractors, even from those that are properly licensed. (*Id*. ¶ 43).

GEICO alleges that the Defaulting Defendants submitted "thousands of fraudulent no-fault insurance charges relating to medically unnecessary . . . services, including patient examinations, nerve conduction velocity ("NCV") testing, electromyography ("EMG") studies, pain fiber nerve conduction studies ("PfNCS") and diagnostic testing" through medical professional corporations and sole proprietorships, thereby wrongfully obtaining hundreds of thousands of dollars from GEICO. (*Id*. ¶¶ 1–2). Further, GEICO alleges that they knew that: (i) the fraudulent services were provided "pursuant to pre-determined fraudulent protocols designed solely to financially enrich Defendants"; (ii) the services were provided "pursuant to the dictates of unlicensed laypersons and through the use of illegal kickback arrangements"; (iii) "the billing codes used . . . misrepresented [the] services that purportedly were provided in order to inflate the charges submitted to GEICO[;]" (iv) "in many cases, [services] were provided by independent contractors, rather than by employees of the Provider

Defendants"; (v) "Armen Medical and Best Empire were illegally formed New Jersey professional corporations not legally authorized to provide medical services in New York and . . . not eligible to receive no-fault reimbursement"; and (vi) "Best Empire . . . was illegally formed and not authorized to provide medical services in New Jersey and . . . not eligible to receive no-fault reimbursement[.]" (*Id.* ¶ 6; *accord id.* ¶ 2).

The scheme allegedly worked as follows: Armengol used various no-fault medical clinics throughout Queens, Brooklyn, and the Bronx, whose patient base was managed by unlicensed laypersons. (*Id.* ¶¶ 56, 58, 64). GEICO received billing from these clinics. (Compl. ¶¶ 59–63). The Complaint alleges that Armengol and the Provider Defendants entered into financial arrangements including paying "fees ostensibly to 'rent' space or personnel" or for other business services but which were actually "'pay-to-play' arrangements[,]" *i.e.*, kickback schemes in which the Defaulting Defendants paid the clinics for referrals to the Provider Defendants which then provided medically unnecessary services to patients. (*Id.* ¶¶ 68–72). Armengol incorporated a series of medical professional corporations and sole proprietorships and split the Provider Defendants' billing for the various services across these clinics. (*Id.* ¶ 74).

The Complaint alleges the scheme violated New Jersey and New York law in several other ways: beyond the allegation that Armengol, who is not licensed in New Jersey and thus cannot own a New Jersey professional corporation, provide healthcare services in New Jersey, or employ physicians not licensed in New Jersey, two of the Provider Defendants—Armen Medical and Best Empire—never obtained a certificate of authority or authorization to operate as medical practices in New York, and thus were

not eligible to receive the benefits that it sought from GEICO.[2] (*Id.* ¶¶ 76–84, 90–95; *see also id.* ¶¶ 310–14 (alleging Armen Medical and Best Empire billed for and misrepresented eligibility to collect benefits for tests purportedly provided in New York)).

GEICO alleges that as part of the scheme, the Defaulting Defendants subjected "virtually every" patient to the same "pre-determined . . . treatment protocol" regardless of their symptoms. (*Id.* ¶ 98). The protocol consisted of an initial consultation, followed by medically unnecessary tests. (Compl. ¶¶ 102–04). When the Defaulting Defendants submitted charges for these consultations, GEICO contends, they misrepresented the actions taken as well as the nature of the consultations and examinations, the time spent, the severity of patients' presenting problems, the extent of the medical decision-making involved, and Armen Medical and Best Empire's eligibility to collect benefits. (*Id.* ¶¶ 108–64). After the initial examination, GEICO alleges that the Defaulting Defendants performed "one or more sessions of medically unnecessary range of motion/muscle testing[,]" (*id.* ¶ 165), which it alleges were unnecessary and duplicative of tests performed in the initial examination, were "unbundled" when billed so as to maximize the charge to GEICO, and submitted in a way that misrepresented the existence of accompanying written reports. (*Id.* ¶¶ 168–97).

The Complaint also alleges that Armengol and her unincorporated sole proprietorship "frequently subjected Insureds to multiple medically useless 'outcome assessment tests' on or about the same dates" as the Defaulting Defendants performed other examinations. (*Id.* ¶¶ 213–14). In addition to billing for unnecessary services,

---

[2] According to the Complaint, Armen Medical provided services only in New York, while Best Empire provided services in New York and New Jersey. (*Id.* ¶¶ 87–88).

GEICO alleges that these bills were fraudulent because when the Defaulting Defendants submitted the corresponding claims, they misrepresented the extent of the services provided.  (*Id*. ¶¶ 215–25).

Finally, the Complaint alleges that when submitting claims, the Defaulting Defendants misrepresented the fact that these services were performed by independent contractors rather than employees, since, under New York's no-fault insurance laws, the Defaulting Defendants are ineligible for reimbursement for services performed by independent contractors.  (*Id*. ¶¶ 315–27).

GEICO brought this action on December 11, 2020.  GEICO's Complaint alleges common law fraud and unjust enrichment under New York law and seeks damages of more than $683,000.00.  (Compl. ¶¶ 350–62, 371–83, 392–404, 413–25).  The Complaint also seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that Armengol and the Provider Defendants "have no right to receive payment for any pending bills submitted to GEICO under the names of the Provider Defendants."  (*Id*. ¶¶ 342–49).

The Defaulting Defendants each failed to appear.[3]  All were properly served with the summons and Complaint, as well as the motion for default judgment and supporting papers.  (*See* Summons Returned Executed for Armengol Medical, P.C. dated Jan. 11, 2021 ("Armengol Medical Summons"), Dkt. No. 8; Summons Returned Executed for

---

[3] The Complaint originally named fourteen defendants: the Defaulting Defendants, and John Doe Defendants 1–10.  The John Doe Defendants were never identified.  On May 20, 2021, the Court ordered that the John Doe Defendants 1–10 be dismissed based on GEICO's voluntary dismissal of claims against them. Accordingly, GEICO does not seek to recover from them in its motion for default judgment.  (*See* Notice of Voluntary Dismissal dated May 20, 2021, Dkt. No. 22; Order dated May 20, 2021).

Armen Medical, P.C. dated Feb. 4, 2021, Dkt. No. 9; Summons Returned Executed for Best Empire Medical, P.C. dated Feb. 4, 2021, Dkt. No. 10; Summons Returned Executed for Sonia Armengol, M.D. dated Feb. 4, 2021 ("Sonia Armengol Summons"), Dkt. No. 11; Summons Returned Executed for Armen Medical, P.C. dated Mar. 11, 2021 ("Armen Medical Summons"), Dkt. No. 12; Summons Returned Executed for Best Empire Medical, P.C., dated Mar. 11, 2021 ("Best Empire Medical Summons"), Dkt. No. 13; Aff. of Service for Notice of Mot. dated May 25, 2021 ("Service of Mot. Aff."), Dkt. No. 27). Armengol Medical, Armen Medical P.C., and Best Empire Medical, P.C. were served by delivery of the summons and Complaint to the New York Secretary of State. (Armengol Medical Summons at 1; Armen Medical Summons at 1; Best Empire Medical Summons at 1). Sonia Armengol, M.D. was served by delivery to a person of suitable age and discretion at her dwelling or usual place of abode and she was subsequently mailed the documents at the same address. (Sonia Armengol Summons at 1, 3). This is sufficient. *See* Fed. R. Civ. P. 4(e)(1); N.Y. C.P.L.R. § 308(2). Consistent with Local Rule 55.2, GEICO mailed the motion for default judgement to Sonia Armengol's residential address and to the Provider Defendants' last known business addresses. (Service of Mot. Aff. at 2).

The Clerk of Court entered defaults as to each of the Defaulting Defendants on March 29, 2021. (*See* Entries of Default). GEICO filed its first motion for default judgment on May 21, 2021. (*See* Notice of Mot. for Default J. dated May 21, 2021, Dkt. No. 23). The Court issued an Order to Show Cause regarding Plaintiffs' failure to mail the relevant papers as required by Local Civil Rule 55.2. (*See* Order to Show Cause dated May 24, 2021). GEICO withdrew its first motion and filed a second motion for default judgment on May 25, 2021. (Mot.). In its renewed motion against the

Defaulting Defendants, GEICO moves only on the counts alleging common law fraud and unjust enrichment and seeking a declaratory judgment.[4] (Mem. of Law in Supp. of Pls.' Mot. for Default J. dated May 25, 2021 ("Pls.' Mem."), attached as Ex. 12 to Mot. at 1). GEICO seeks $625,196.38 in damages and $157,551.88 in prejudgment interest, and a declaration that it is not obligated to pay $1,428,386.52 in additional pending claims. (*Id*. at 6, 17). For the reasons stated below, the Court respectfully recommends that the motion be granted in part against the Defaulting Defendants and the Clerk enter judgment in the amounts as detailed herein.

DISCUSSION

I.    Entry of Default Judgment

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. *Id*. r. 55(b)(2).

The Clerk entered defaults against each of the four Defaulting Defendants on March 29, 2021. (*See* Entries of Default). The next question, before reaching liability or

---

[4] Since the John Doe Defendants 1–10, against whom the Complaint brought claims of aiding and abetting fraud, have been dismissed, those claims are not a part of the present motion.

damages, is therefore whether the Defaulting Defendants' conduct is sufficient to warrant default judgment.

In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001). These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

First, the failure by the Defaulting Defendants to respond to the Complaint demonstrates the defaults were willful. *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding the defendants' non-appearance and failure to respond "indicate willful conduct" in the context of a default judgment). They had sufficient notice of the present litigation because they were properly served with a summons and the Complaint. (*See supra* at 6–7). The second motion for default judgment was also served via mail to Defaulting Defendants in accordance with Local Rule 55.2, *i.e.,* at their last known business addresses and/or home addresses. (*See* Service of Mot. Aff.). Notwithstanding this notice and service, the Defaulting Defendants did not respond to the Complaint, did not appear, and have not in any way attempted to defend themselves, thus constituting willfulness in the context of default judgment. *See, e.g.*, *Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation) ("Defendant has not responded to Plaintiffs'

motion for default judgment, has not appeared in this action, and has not communicated with the Court in any way. Accordingly, Defendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness.").

Second, the Court cannot conclude that there is any meritorious defense to the allegations because the Defaulting Defendants did not appear or present evidence of such a defense.

> [W]here a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims, which circumstance weighs in favor of granting a default judgment. If a defendant presents no defense to the court, the allegations in the complaint are deemed admitted.

*Id.* (quotations and citations omitted); *see, e.g.*, *Indymac Bank*, 2007 WL 4468652, at *1 ("[T]he Court is unable to determine whether . . . defendants have a meritorious defense to Plaintiff's allegations because they have presented no such defense to the Court.").

Third, GEICO would be prejudiced if the motion for default were denied, "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), *report and recommendation adopted*, 2009 U.S. Dist. LEXIS 6074, at *2 (Jan. 26, 2009); *see also Sola Franchise Corp.*, 2015 WL 1299259, at *15 (finding the prejudice element was met because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims adequately set forth in the Complaint.").

As a result, all three factors permit entry of a default judgment. The Court now turns to the liability imposed, damages, and other relief awarded in such judgments.

II.    <u>Liability</u>

GEICO alleges that it is entitled to default judgment on its common law fraud and unjust enrichment claims.  The Court must therefore determine whether the facts alleged in the Complaint are sufficient to establish liability of the Defaulting Defendants. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981) (recognizing the court's authority, even after default, to determine whether plaintiff has stated a cause of action); *e.g.*, *Gov't Emps. Ins. Co. v. Spectrum Neurology Grp., LLC*, No. 14-CV-5277, 2016 WL 11395017, at *2 (E.D.N.Y. Feb. 17, 2016) ("Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability."), *report and recommendation adopted sub nom. Gov't Emps. Ins. Co. v. Premier Prof'l Servs., LLC*, 2016 WL 1071099, at *1 (Mar. 18, 2016).

A.    <u>Common Law Fraud</u>

GEICO alleges that the Defaulting Defendants committed common law fraud. (Compl. ¶¶ 350–356, 371–377, 392–398, 413–419; Pls.' Mem. at 10–15).  A plaintiff asserting a claim of common law fraud under New York law must allege: "(1) a material representation or omission of fact; (2) made with knowledge of its falsity; (3) with scienter or an intent to defraud; (4) upon which the plaintiff reasonably relied; and (5) [that] such reliance caused damage to the plaintiff."  *Soley v. Wasserman*, 823 F. Supp. 2d 221, 235 (S.D.N.Y. 2011) (quotations omitted); *accord Schlaifer Nance & Co. v. Est. of Warhol*, 119 F.3d 91, 98 (2d Cir. 1997).

"[I]n federal court, fraud must be plead with particularity in accordance with Fed. R. Civ. P. 9(b)[.]"  *AIU Ins. Co. v. Olmecs Med. Supply, Inc.*, No. 04-CV-2934, 2005 WL 3710370, at *14 (E.D.N.Y. Feb. 22, 2005).  As a result, in making out the first element

for fraud—a material representation or omission of fact—a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* at *10 (quoting *Anatian v. Coutts Bank (Switz.) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999)); *see also Gov't Emps. Ins. Co. v. Badia*, No. 13-CV-1720, 2015 WL 1258218, at *14 (E.D.N.Y. Mar. 18, 2015) (adopting report and recommendation).

Here, GEICO has alleged that the Defaulting Defendants, through material misrepresentations, created a fraudulent scheme that billed GEICO for benefits to which they were not entitled. (*See supra* at 3–6). The Complaint includes exhibits with charts that provide a representative sample of the fraudulent claims that the Defaulting Defendants submitted, or caused to be submitted, to GEICO. (Compl. ¶ 8; Charts of Fraudulent Claims (the "Claims Charts"), attached as Exs. 1–4 to Compl.). Each of the Defaulting Defendants were involved with at least one of the claims contained in the Claims Charts, and GEICO alleges each of the claims submitted was fraudulent. (Compl. ¶ 8.)

The Claims Charts—which identify claims (and thereby the fraudulent statements) made by each of the Defaulting Defendants and when those claims were made—are sufficient to meet the standard of Rule 9(b). *See, e.g.*, *Badia*, 2015 WL 1258218, at *15 ("Plaintiffs' very detailed chart identifies Baneur as the speaker of the fraudulent statements and states when and where each statement was made by listing Baneur's claim submission dates, claim numbers and claim-demand amounts."); *Gov't Emps. Ins. Co. v. Alrof, Inc.*, No. 11-CV-4028, 2013 WL 9600668, at *5 (E.D.N.Y. July 19, 2013) ("Plaintiffs set forth examples and described in detail how the Retail Defendants submitted charges for items more expensive than those actually dispensed,

if dispensed at all.  Plaintiffs have also supplied a schedule detailing when the Retail Defendants' claims were paid.  Accordingly, Plaintiffs have pled the fraud with sufficient particularity[.]") (citations omitted), *report and recommendation adopted sub nom. Gov't Emps. Ins. Co. v. Park Slope Med. & Surgical Supply, Inc.*, 2013 WL 5209415, at *1 (Sept. 13, 2013); *Allstate Ins. Co. v. Lyons* (*Lyons I*), 843 F. Supp. 2d 358, 373 (E.D.N.Y. 2012) ("Allstate attaches to its Complaint a series of charts that include each of the charges submitted by the defendants that it believes were fraudulent.  The charts detail the entity that submitted each claim, as well as the corresponding claim number, the year Allstate paid the claim, and the amount paid by Allstate.  Such information clearly directs defendants to the specific misrepresentations Allstate is alleging.  Under the circumstances, the specificity requirement of 9(b) requires no more[.]") (citations omitted).

GEICO has alleged that the Defaulting Defendants knew that the claims submitted were false claims.  (Compl. ¶¶ 73, 176–77, 201).  Additionally, the Complaint alleges that the Defaulting Defendants had both motive and opportunity for the fraud: they each had strong motive to receive monetary reimbursements to which they were not entitled, and they had the opportunity and ability to receive those reimbursements by submitting fraudulent claims to Allstate.  (*Id.* ¶¶ 353, 355, 374, 376, 395, 397); *see also Gov't Emps. Ins. Co. v. Erlikh*, No. 16-CV-7120, 2019 WL 1487576, at *6 (E.D.N.Y. Feb. 28, 2019) (alleging that defendants "intentionally made . . . false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges"), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 57885, at *1 (Mar. 31, 2019).  Such motive and opportunity are a sufficient basis on which to infer that a party acted with an intent to defraud.  *See, e.g.*, *Spectrum Neurology*, 2016 WL

11395017, at *3 ("This [intent] requirement may be satisfied by alleging facts that show that defendants had both motive and opportunity to commit fraud.") (quotations omitted); *see also Allstate Ins. Co. v. Lyons* (*Lyons II*), No. 11-CV-2190, 2015 WL 13735435, at *4 (E.D.N.Y. Mar. 10, 2015) ("Since the purpose of submitting these false claims was to obtain funds the defendants were not entitled to obtain, there was an unmistakable intent to have the plaintiffs rely on the false claims."), *report and recommendation adopted*, Order dated Mar. 31, 2015; *Gov't Emps. Ins. Co. v. Li-Elle Serv., Inc.*, No. 12-CV-2157, 2013 WL 829302, at *7 (E.D.N.Y. Feb. 11, 2013) ("Plaintiffs allege that Defendants not only knew that they were submitting fraudulent claims to Allstate, but that they did so intentionally in a scheme for profit. This gives rise to a strong inference of fraudulent intent and is sufficient to establish the scienter requirement.") (citation omitted), *report and recommendation adopted as modified*, 2013 WL 829274, at *1 (Mar. 6, 2013).

Finally, GEICO avers that it relied on the Defaulting Defendants' misrepresentations contained in their submitted claims, and as a result, paid them "more than $683,000.00" in claims that were otherwise un-reimbursable. (Compl. ¶¶ 330–41; Pls.' Mem. at 14–15 (citing damages of $625,196.38)). These allegations, taken as true on default, satisfy the fourth and fifth elements of common law fraud by showing a reasonable reliance on Defaulting Defendants' misrepresentations, which caused injury to GEICO. *See, e.g.*, *Erlikh*, 2019 WL 1487576, at *7 ("Given the lengths the Defaulting Defendants took to conceal the fraudulent bills . . . and the facially valid bills, it was reasonable for GEICO to rely on the bills containing the purported misstatements and pay the Defaulting Defendants."); *Spectrum Neurology*, 2016 WL 11395017, at *4.

GEICO, therefore, has sufficiently alleged each of the elements for a claim of common law fraud against the Defaulting Defendants and is therefore entitled to a judgment of liability on this claim. *See Allstate Ins. Co. v. Abramov*, No. 16-CV-1465, 2020 WL 1172697, at *11 (E.D.N.Y. Feb. 21, 2020), *report and recommendation adopted*, No. 16-CV-1465, 2020 WL 1166498, at *1 (E.D.N.Y. Mar. 11, 2020).

B. <u>Unjust Enrichment</u>

GEICO also seeks a default judgment for unjust enrichment against the Defaulting Defendants. Having decided to grant a default judgment on the fraud claims against these parties, it is inappropriate to also grant judgment on the unjust enrichment claim. While GEICO explains in its brief that it has pled the elements of an unjust enrichment claim, (*see* Pls.' Mem. at 16), it does not address the viability of such a claim when other tort liability already exists. Although its name suggests otherwise, unjust enrichment is not always viable when one party unjustly holds property or money of another. Properly understood, the claim protects a plaintiff only in those circumstances where she has no other recourse in tort or contract. As the New York Court of Appeals has explained:

> [U]njust enrichment is not a catchall cause of action to be used when others fail. It is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff. Typical cases are those in which the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled. An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.

*Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 790 (2012) (internal citations omitted).

Here, GEICO alleges that the Defaulting Defendants were unjustly enriched at GEICO's expense. But GEICO's unjust enrichment claims are based on the same

transactions as their claims for common law fraud, and thus these claims duplicate the fraud claims. As a result, GEICO is not entitled to a judgment on its claims for unjust enrichment. *See Abramov*, 2020 WL 1172697, at *12; *see also Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 877 (E.D.N.Y. 2018) ("Unjust enrichment claims should be dismissed where the violative conduct alleged is conterminous with a conventional tort or contract claim, regardless of whether the tort or contract claim is dismissed.") (quotations omitted); *e.g.*, *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 404 (E.D.N.Y. 2018) ("The instant case is not representative of the 'unusual' circumstances which provide for an unjust enrichment claim. The Plaintiffs' unjust enrichment claim rehashes and improperly duplicates their fraud claims. . . . As this claim is based on the same set of facts as the fraud claim, the Plaintiffs' thirteenth (unjust enrichment) claim is dismissed[.]"); *Allstate Ins. Co. v. Nazarov*, No. 11-CV-6187, 2015 WL 5774459, at *16 (E.D.N.Y. Sept. 30, 2015) (denying liability on default judgment motion reasoning that "as Plaintiffs have established the Danilovich Defendants' liability for common law fraud, Plaintiffs have not adequately pled a claim for unjust enrichment because that claim would rely on duplicative facts.").

C. Joint and Several Liability

GEICO seeks to hold the Defaulting Defendants jointly and severally liable. "Under New York law, where defendants acted jointly and/or concurrently to produce a single injury, those defendants must be held jointly and severally liable for all of the harm resulting from their actions." *Gov't Emps. Ins. Co. v. Infinity Health Prods., Ltd.*, No. 10-CV-5611, 2012 WL 1427796, at *10 (E.D.N.Y. Apr. 6, 2012), *report and recommendation adopted*, 2012 WL 1432213, at *1 (Apr. 25, 2012). "Joint and several liability may . . . be imposed where a plaintiff demonstrates that the harm it suffered as a

result of the conduct of two or more defendants is 'indivisible.'" *Spectrum Neurology*, 2016 WL 11395017, at *6 (citing *Infinity Health Prods.*, 2012 WL 1427796, at *11); *see also Erlikh*, 2019 WL 1487576, at *8.

GEICO paid $625,196.38 in reliance on claims submitted by Armengol through Armengol Medical, Best Empire and Armen Medical and through her sole proprietorship, Sonia Armengol, M.D. (Decl. of Kathy Asmus dated May 19, 2021 ("Asmus Decl."), attached as Ex. D to Decl. of Frank P. Tiscione ("Tiscione Decl."), Dkt. No. 26-1 ¶¶ 7–8*; see also* Tiscione Decl. ¶ 18). GEICO paid the Provider Defendants in the following amounts: $319,246.31 to the Unincorporated Armengol Practice; $31,104.36 to Armen Medical; $30,489.41 to Best Empire; and $244,356.30 to Armengol Medical. (Asmus Decl. ¶ 8; Tiscione Decl. ¶ 18).

Courts have found that an injury is divisible for the purposes of determining joint and several liability where there has been a clear allocation of fault between each defaulting defendant. *See, e.g.*, *Gov't Emps. Ins. Co. v. Parkway Med. Care, P.C.*, No. 15-CV-3670, 2017 WL 1133282, at *15 (E.D.N.Y. Feb. 21, 2017) ("Plaintiffs' submissions identify claims submitted by each Defaulting Defendant, indicate which defendant is responsible for each claim, and list the amounts paid to each Defendant."), *report and recommendation adopted*, 2017 WL 1131901, at *1 (Mar. 24, 2017).

As in *Parkway Med. Care, P.C.*, here, GEICO has adequately alleged that Sonia Armengol, M.D., as the nominal owner of the Provider Defendants, is jointly and severally liable for the damages attributed to each of the Provider Defendants that she nominally owned and submitted fraudulent claims through. (Compl. ¶¶ 12, 56, 73–74; *Parkway Med. Care, P.C.*, 2017 WL 1133282, at *14 (finding that plaintiffs "adequately allege[d] that each Nominal Owner Defendant [was] jointly and severally liable for the

damages attributed to the PC Defendant that he or she nominally owned and caused fraudulent claims to be submitted though"). But Plaintiffs have not sufficiently alleged that all of the Provider Defendants should be held jointly and severally liable with each other. *Parkway Med. Care, P.C.*, 2017 WL 1133282, at *15. In *Parkway*, the Court held that even though the plaintiffs established that the defendants colluded in the same fraudulent scheme, they failed to allege that the defendants "acted jointly with one another" where each entity "filed its own fraudulent claims." (*Id.*). So too here. The Claims Charts GEICO submitted demonstrate that fraudulent claims are identifiable by each entity. They indicate which Provider Defendant is responsible for each claim, and the amount sought. (*See* Claims Charts). Accordingly, GEICO has not demonstrated that the injury suffered was indivisible. *Parkway Med. Care, P.C.,* 2017 WL 1133282, at *15; *see also Nazarov*, 2015 WL 5774459, at *18 (finding that "it would be inappropriate to assign joint and several liability between" two defaulting defendants where plaintiffs did not allege that one defaulting defendant "had any role in the fraudulent billings" sent by the other); *Infinity Health Prod., Ltd.*, 2012 WL 1427796, at *11 (same). Here, GEICO's allegation is that Armengol wrongfully obtained monies by submitting fraudulent claims to GEICO through each of the four Provider Defendants that she nominally owned. (Pls.' Mem. at 3). As such, "each Defaulting Defendant is only jointly and severally liable with the enterprises through which it directly participated in submitting claims[.]" *Parkway Med. Care, P.C.*, 2017 WL 1133282, at *15 (E.D.N.Y. Feb. 21, 2017). Armengol is jointly and severally liable with the Unincorporated Armengol Practice, Armengol Medical, Best Empire, and with Armen Medical. There is no basis to impose any other joint and several liability, for example between Best

Empire and Armen Medical, since all other entities were downstream of Armengol and did not themselves submit false billings through other entities.

III.  <u>Damages</u>

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages." *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d. Cir. 1992). "[A]lthough the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, No. 10-CV-3101, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012) (citations and quotations omitted), *report and recommendation adopted,* 2012 WL 1354481, at *2 (Apr. 13, 2012).  "The court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 108 (2d Cir. 1992)).  "Where, on a damages inquest, a plaintiff fails to demonstrate its damages to a reasonable certainty, the court should decline to award any damages even though liability has been established through default." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012) (adopting report and recommendation) (collecting cases).  Under Rule 55(b)(2), "it [is] not necessary for the District Court to hold a hearing" to determine the amount of damages "as long as it ensured that there was a basis for the damages specified in the default judgment." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989).  A court may make a damages determination upon a review of detailed affidavits and documentary

evidence.  *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991); *Fustok*, 873 F.2d at 40.

GEICO has submitted declarations from Frank P. Tiscione, counsel for Plaintiffs, (Tiscione Decl.), Kathy Asmus, Claims Manager at GEICO, (Asmus Decl.), and other supporting documents in order to demonstrate its damages.  (Plaintiffs' Prejudgment Interest Calculation Chart ("Pre-Judgment Interest Charts"), attached as Ex. E. to Tiscione Decl.).  The Defaulting Defendants have not submitted any response or opposition to these filings.

A.  <u>Fraud Damages</u>

GEICO seeks damages on their fraud claims in an amount equal to the payments it made in reliance on the Defaulting Defendants' scheme.  (Tiscione Decl. ¶ 13).  GEICO's fraud claim is premised on the allegation—accepted as true on default—that each bill submitted contained a misstatement or omission.  (*See* Compl. ¶¶ 328–29).  And as a result, the entirety of the amount sought from and paid by GEICO was reimbursement prohibited under the no-fault law.  (*See id.* ¶¶ 1, 10, 340).  Under such a fraud theory, where each bill constitutes a fraudulent claim, GEICO is entitled to damages in the entire amount it paid to the Defaulting Defendants.  *See* Restatement (Second) of Torts § 525 (Am. Law Inst. 1977) ("One who fraudulently makes a misrepresentation of fact . . . for the purpose of inducing another to act . . . is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation."); *see, e.g.*, *Allstate Ins. Co. v. Williams* (*Williams II*), No. 13-CV-2893, 2015 WL 5560543, at *7 (E.D.N.Y. Aug. 28, 2015) (describing how each bill listed in Allstate's spreadsheets reflects "payment for each allegedly fraudulent claim"), *report and recommendation adopted sub nom. Allstate Ins. Co. v. Dublin*, 2015 WL

5560546, at *1 (Sept. 21, 2015); *Chubb & Son Inc. v. Kelleher*, No. 92-CV-4484, 2010 WL 5978913, at *6 (E.D.N.Y. Oct. 22, 2010) (recommending an award of damages for the entirety of claims submitted for reimbursement under RICO and common law fraud), *report and recommendation adopted*, 2011 WL 839553, at *1 (Mar. 7, 2011). GEICO has submitted records—in the form of spreadsheets—of payments they made to the Provider Defendants "in connection with the claims that were submitted or caused to be submitted to GEICO by the Provider Defendants." (Asmus Decl. ¶ 7; *see also* TIN Run, attached as Ex. 1 to Asmus Decl.; Claim Run, attached as Ex. 2 to Asmus Decl.). These records were generated using "GEICO's earnings reporting system." (Asmus Decl. ¶ 4). This system also generates IRS Forms 1099-MISC, which allows GEICO to track payments made to each payee using its tax identification number. (*Id.*). GEICO's method of compilation has been found reliable to determine damages. *See, e.g., Spectrum Neurology*, 2016 WL 11395017, at *6 ("GEICO uses this system to generate IRS Forms 1099-MISC, suggesting its reliability[.]"). These records indicate that GEICO made payments to each of the Provider Defendants listed above, as operated by Armengol, totaling $625,196.38. (Asmus Decl. ¶ 4; TIN Run; Pls.' Mem. at 6; *see also* Compl. ¶¶ 12, 56). Therefore, the Court respectfully recommends that GEICO be awarded a judgment against the Defaulting Defendants for $625,196.38.[5]

B. Prejudgment Interest

GEICO seeks prejudgment interest at a rate of 9% per year on its fraud damages. (Pls.' Mem. at 17).

---

[5] GEICO's Complaint also seeks an award of punitive damages. (*See, e.g.*, Compl. ¶¶ 355–56, 376–77, 397–98, 418–19). But the motion for default judgment does not seek such damages.

"In diversity cases, the award of prejudgment interest is a substantive issue, governed . . . by New York law." *Gov't Emps. Ins. Co. v. IAV Med. Supply, Inc.*, No. 11-CV-4261, 2013 WL 764735, at *8 (E.D.N.Y. Feb. 8, 2013), *report and recommendation adopted*, 2013 WL 765190, at *1 (Feb. 28, 2013). New York law provides for prejudgment interest on fraud claims, *id.*, and dictates that "[i]nterest shall be computed from the earliest ascertainable date the cause of action existed," N.Y. C.P.L.R. § 5001(b). In the insurance fraud context, however, "prejudgment interest accrues from the date the insurance company makes payment." *IAV Med. Supply*, 2013 WL 764735, at *9 (quotations omitted).

In its motion, GEICO requests less interest than what New York law provides; it requests that the court calculate interest "from the first day following the year in which the payments were made on the fraudulent claims" which amounts to $157,551.88. (Pls.' Mem. at 17; *see also* Pre-Judgment Interest Charts). The Court recommends that GEICO be awarded prejudgment interest at 9% per year, beginning on the first day of the year following GEICO's payments through the date of the entry of judgment. (*See* Tiscione Decl. ¶ 20 (calculating interest through June 1, 2021 as "an estimated judgment entry date"); *IAV Med. Supply*, 2013 WL 764735, at *9; *see, e.g.*, *Williams II*, 2015 WL 5560543, at *8 ("For each fraudulent claim, Allstate seeks interest from the first day of the year following the year in which it received that claim through December 31, 2014. This methodology, which groups all of the claims filed in a given year into a group for purposes of computing interest, has been used in previous default cases in this district, and I recommend doing so here as well."); *Gov't Emps. Ins. Co. v. AMD Chiropractic, P.C.*, No. 12-CV-4295, 2013 WL 5131057, at *9 (E.D.N.Y. Sept. 12, 2013) (granting prejudgment interest using the same calculation)).

The Court recommends that the 9% per year interest rate be awarded on the following amounts, from the dates indicated until the date that judgment is entered:[6]

| Armengol Medical, P.C. | | | |
|---|---|---|---|
| **Amount Paid** | **Billing Year** | **Interest Commencement Date** | **Per Diem Interest** |
| $222,859.84 | 2015 | January 1, 2016 | $54.95 |
| $18,451.58 | 2016 | January 1, 2017 | $4.55 |
| $3,044.88 | 2017 | January 1, 2018 | $0.75 |

| Armen Medical, P.C. | | | |
|---|---|---|---|
| **Amount Paid** | **Billing Year** | **Interest Commencement Date** | **Per Diem Interest** |
| $27,701.71 | 2019 | January 1, 2020 | $6.83 |
| $3,402.65 | 2020 | January 1, 2021 | $0.84 |

| Best Empire Medical, P.C. | | | |
|---|---|---|---|
| **Amount Paid** | **Billing Year** | **Interest Commencement Date** | **Per Diem Interest** |
| $30,489.41 | 2019 | January 1, 2020 | $7.52 |

| Sonia Armengol, M.D. | | | |
|---|---|---|---|
| **Amount Paid** | **Billing Year** | **Interest Commencement Date** | **Per Diem Interest** |
| $3,302.39 | 2016 | January 1, 2016 | $0.81 |
| $502.81 | 2017 | January 1, 2017 | $0.12 |
| $478.67 | 2018 | January 1, 2018 | $0.12 |
| $191,140.60 | 2019 | January 1, 2019 | $47.13 |
| $ 123,655.20 | 2020 | January 1, 2020 | $30.49 |

---

[6] The amounts in these tables come from the Interest Charts, attached to the Tiscione Declaration as Exhibit E. Each table refers to one of the Provider Defendants which are the subject of Counts II, V, VII, and XI. (*See* Interest Charts; Tiscione Decl. ¶ 20).

C. Unjust Enrichment Damages

To the extent GEICO seeks damages from any of the Defaulting Defendants on its claims of unjust enrichment, the Court recommends that application be denied. As explained above, (*see supra* at 15–16), GEICO is not entitled to a judgment of liability based on unjust enrichment; as such, the Court cannot award damages for such claims. *See, e.g.*, *Allstate Ins. Co. v. Abutova*, No. 13-CV-3494, 2017 WL 1185222, at *7 (E.D.N.Y. Feb. 15, 2017) (awarding no damages for unjust enrichment when "plaintiffs' motion for a default judgment on the unjust enrichment claims should be denied as duplicative"), *report and recommendation adopted*, No. 13-CV-3494, 2017 WL 1184107, at *1 (E.D.N.Y. Mar. 29, 2017); *Nazarov*, 2015 WL 5774459, at *16 (same).

IV.    Declaratory Judgment

GEICO seeks a declaratory judgment relieving it from any obligation to pay $1,428,386.52 in unpaid fraudulent claims made by the Defaulting Defendants. (Pls.' Mem. at 10; Compl. ¶¶ 342–49). A party seeking a declaratory judgment must allege that there is a "substantial controversy, between parties with adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians*, 94 F.3d 747, 752 (2d Cir. 1996) (quotations and emphasis omitted). "The controversy must be real and substantial such that declaratory relief will provide 'specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *Williams II*, 2015 WL 5560543, at *6 (quoting *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001)). "Declaratory relief is appropriate '(1) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue; or (2) when it will terminate and

afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings.'" *Id.* (quoting *Md. Cas. Co. v. Rosen*, 445 F.2d 1012, 1014 (2d Cir. 1971)). However, "a court has broad discretion to decide whether to render a declaratory judgment." *Id.* (citing *Orion Pictures Corp. v. Showtime Networks, Inc.*, 4 F.3d 1095, 1100 (2d Cir. 1993)).

The Court declines to recommend entry of a declaratory judgment. Although GEICO alleges that the Defaulting Defendants have initiated collections litigation against GEICO on allegedly fraudulent claims which is currently pending in civil court, (Asmus Decl. ¶¶ 6, 11), GEICO has failed to provide sufficient information about these claims to warrant a declaratory judgment. There is no list of cases naming the collection actions or where they are pending; the Court is unaware of who the parties are in those matters, or the amounts involved. For example, GEICO's Claims Charts do not detail the additional amounts that are in dispute in the pending state court litigation. And the amount sought to be invalidated—$1,428,386.52—is far greater than the damages sought here. Further, GEICO has not alleged, other than in the most conclusory fashion, (*see* Compl. ¶ 4), that these pending lawsuits are infected with the same problems as the claims at issue in this litigation. Furthermore, the Defaulting Defendants have defaulted; there is no evidence they are communicating with GEICO, and there is nothing to indicate the present status of the collections actions and whether in fact the Defaulting Defendants are continuing to attempt to collect from GEICO. Ultimately, the decision whether to grant a declaratory judgment is a matter of discretion, and given the lack of information provided, the Court therefore respectfully recommends that this Court decline to enter a declaratory judgment. *E.g.*, *Abramov*, 2020 WL 1172697, at *16; *cf. Falls Lake Nat'l Ins. Co. v. DNA Plumbing Contractors,*

*Inc.*, No. 20-CV-2798, 2021 WL 3518279, at *7 (E.D.N.Y. May 4, 2021) ("Courts deny requests for declaratory judgment where the insurer fails to provide information about the status of underlying state court actions, including whether those suits predate the instant action, the procedural posture of the suits, or whether those suits involve questions of state or federal law.") (collecting cases), *report and recommendation adopted*, 2021 WL 2702571, at *1 (July 1, 2021).

<u>CONCLUSION</u>

For the reasons stated above, the Court respectfully recommends that the motion for default judgment be granted in part against the Defaulting Defendants as follows:

1. Against the Defaulting Defendants, liability be entered as to GEICO's common law fraud claim;

2. Against the Defaulting Defendants, compensatory damages of $625,196.38 to be divided in accordance with the following:

   a. Sonia Armengol, M.D. and the Unincorporated Armengol Practice be jointly and severally liable for $319,246.31 in compensatory damages, in addition to an award of prejudgment interest at a rate of 9% per year, to be calculated by the Clerk of Court from the dates indicated in the tables above until the date of judgment is entered;

   b. Sonia Armengol, M.D. and Armengol Medical, P.C. be jointly and severally liable for $244,356.30 in compensatory damages, in addition to an award of prejudgment interest at a rate of 9% per year, to be calculated by the Clerk of Court from the dates indicated in the tables above until the date of judgment is entered;

c. Sonia Armengol, M.D. and Best Empire, P.C. be jointly and severally liable for $30,489.41 in compensatory damages, in addition to an award of prejudgment interest at a rate of 9% per year, to be calculated by the Clerk of Court from the dates indicated in the tables above until the date of judgment is entered;

d. Sonia Armengol, M.D., and Armen Medical, P.C., be jointly and severally liable for $31,104.36 in compensatory damages, in addition to an award of prejudgment interest at a rate of 9% per year, to be calculated by the Clerk of Court from the dates indicated in the tables above until the date of judgment is entered.

3. The Court recommends that the request for a declaratory judgment be denied.

4. The Court also recommends that the claim for unjust enrichment be dismissed.

Any objections to the Report and Recommendation above must be filed with the Clerk of Court within 14 days of service of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.") (quotations omitted).

GEICO shall serve a copy of this Report and Recommendation on the Defaulting Defendants and file proof of such service on the record.

SO ORDERED.

/s/ *Sanket J. Bulsara*  January 19, 2022
_____
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York