UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GOVERNMENT EMPLOYEES INSURANCE
COMPANY, GEICO INDEMNITY COMPANY,
GEICO GENERAL INSURANCE COMPANY, and
GEICO CASUALTY COMPANY,

                                        Plaintiffs,

                                        **REPORT &**
                                        **RECOMMENDATION**
        -against-                          20-CV-6052-RPK-SJB

SONIA ARMENGOL, M.D., ARMENGOL
MEDICAL, P.C., BEST EMPIRE MEDICAL, P.C.,
and ARMEN MEDICAL, P.C.,
                                     Defendants.
-----------------------------------------------------------------X

**BULSARA, United States Magistrate Judge:**

        Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "GEICO") commenced this action for fraud and unjust enrichment, alleging that Defendants engaged in a scheme to submit fraudulent charges for medically unnecessary healthcare services for covered individuals under New York's no-fault insurance law. (Compl. dated Dec. 11, 2020 ("Compl."), Dkt. No. 1). Defendants Sonia Armengol, M.D., Armengol Medical, P.C., Best Empire Medical, P.C., and Armen Medical, P.C. (collectively, the "Defaulting Defendants") did not appear. The Clerk of Court entered a default against them on March 29, 2021. (Clerk's Entries of Default dated Mar. 29, 2021, Dkt. Nos. 18–21).

        The Court previously granted a motion for default judgment and recommended that GEICO be awarded a judgment of liability on its fraud claim, damages, and interest. At issue now is GEICO's request for a declaratory judgment providing that the Defaulting Defendants "have no right to receive payment for any pending bills

submitted to GEICO." (Compl. ¶¶ 342–49; Proposed J., attached as Ex. E to Second Mot., at 2–3). For the reasons stated below, the Court respectfully recommends that GEICO's request for a declaratory judgment be granted.

BACKGROUND

The Court assumes familiarity with the facts and procedural history detailed in the undersigned's Report and Recommendation ("R&R") dated January 19, 2022. The R&R recommended that GEICO's first motion for default judgment be granted in part, entering liability as to the common law fraud claim and awarding $625,196.38 in compensatory damages plus prejudgment interest, but that the claim for unjust enrichment be dismissed and the request for a declaratory judgment be denied. *Gov't Emps. Ins. Co. v. Armengol*, No. 20-CV-6052, 2022 WL 432320, at \*11–\*12 (E.D.N.Y. Jan. 19, 2022). GEICO timely filed a 30-page partial objection limited to the Court's denial of declaratory relief. (Pls.' Obj. to R&R dated Feb. 2, 2022, Dkt. No. 31). The Honorable Rachel Kovner adopted the uncontested portions of the R&R and denied without prejudice the request for a default declaratory judgment, in part because the "argument that GEICO presse[d] in its objection was minimally developed" in the initial motion. *Gov't Emps. Ins. Co. v. Armengol*, No. 20-CV-6052, 2022 WL 426163, at \*1 (E.D.N.Y. Feb. 11, 2022) (adopting report and recommendation). GEICO filed a renewed motion seeking declaratory relief on April 20, 2022. (*See* Pls.' Second Mot. for Default J. dated Apr. 20, 2022 ("Second Mot."), Dkt. No. 34). Pursuant to Local Civil Rule 55.2(c), GEICO mailed the motion papers to Sonia Armengol's last known residence and to the remaining Defendants' last known business addresses. (Aff. of Service dated Apr. 20, 2022, Dkt. No. 35). The following day, Judge Kovner referred the

motion to the undersigned for a report and recommendation. (Order Referring Mot. dated Apr. 21, 2022).

## DISCUSSION

GEICO asks the Court to declare that it is not legally obligated to pay approximately $1.1 million in no-fault insurance claims submitted by the Defaulting Defendants. (Compl. ¶¶ 4, 349). Specifically, GEICO asks for a declaration that the Defaulting Defendants "have no right to receive payment for any pending bills submitted to GEICO" because the underlying services, "to the extent that they were provided at all," were fraudulent—for example, the services were medically unnecessary, provided by unlicensed laypersons, provided through corporations not authorized to provide no-fault services or seek reimbursement, among other reasons. (*Id.* ¶¶ 4, 344–48, 434; Proposed J. at 2–3; *Armengol*, 2022 WL 432320, at *3). In other words, on the basis of the Defaulting Defendants' fraud, GEICO seeks a declaration that it has no payment obligation for any bills submitted by them. The Court concludes that such a declaration is appropriate.

The Declaratory Judgment Act ("DJA") provides: "In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration[.]" 28 U.S.C. § 2201(a). "Actual controversy" in the DJA refers to the same type of "cases" and "controversies" embodied in Article III of the Constitution. *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 95 (2d Cir. 2011), *aff'd*, 568 U.S. 85 (2013). A declaratory judgment action is ripe for adjudication if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the

3

issuance of a declaratory judgment." *Id.* (quotations omitted); *see also Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 92 (2d Cir. 2023) ("[A]n 'actual controversy' within the meaning of the DJA 'must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character[.]'" (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239, 241 (1937))). "In other words, the DJA 'creates a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy.'" *Admiral Ins. Co.*, 57 F.4th at 92 (quoting *United States v. Doherty*, 786 F.2d 491, 498 (2d Cir. 1986)).

As such, "[t]hat the liability may be contingent does not necessarily defeat jurisdiction of a declaratory-judgment action. Rather, courts should focus on the *practical likelihood* that the relevant contingencies will occur." *Id.* (emphasis in original) (quoting *Emps. Ins. of Wausau v. Fox Ent. Grp., Inc.*, 522 F.3d 271, 278 (2d Cir. 2008)). "[A] touchstone to guide the probe for sufficient immediacy and reality is whether the declaratory relief sought relates to a dispute where the alleged liability has already accrued or the threatened risk occurred, or rather whether the feared legal consequence remains a mere possibility." *In re IBM Arb. Agreement Litig.*, No. 21-CV-6296, 2022 WL 2752618, at *4 (S.D.N.Y. July 14, 2022) (alteration in original) (quotations omitted). Importantly, the "threat of future litigation remains relevant in determining whether an actual controversy exists." *Nike*, 663 F.3d at 96; *see also Westcode, Inc. v. Mitsubishi Elec. Corp.*, 171 F. Supp. 3d 43, 48 (N.D.N.Y. 2016) ("[C]ommunications indicating a party's intent to take future legal action have been deemed a threat of litigation sufficient to create an actual controversy for adjudication." (quotations omitted)).

4

A district court is thus tasked with ascertaining "the practical likelihood that the triggering event will occur," *Admiral Ins. Co.*, 57 F.4th at 93, which here is the likelihood that the Defaulting Defendants have or will commence litigation against GEICO to collect the allegedly fraudulent unpaid bills. Though the Complaint alleged generally that the Defaulting Defendants initiated collection actions against GEICO that were pending, (Compl. ¶¶ 9, 339), the Court's initial R&R observed that "GEICO has failed to provide sufficient information about these claims to warrant a declaratory judgment," in part because "there is nothing to indicate the present status of the collections actions." *Armengol*, 2022 WL 432320, at *11. Further, Plaintiffs did not proffer evidence that the Defaulting Defendants were communicating with GEICO or continuing to attempt to seek payment. *Id.* In other words, it was not clear to the Court that there was an actual justiciable controversy between the parties over the unpaid bills, and the Court reasoned that, if it granted a declaratory judgment, it would be rendering an advisory opinion on a hypothetical dispute.

In support of its first motion, GEICO submitted a chart outlining for each collection proceeding the Defaulting Defendant who brought the action, the name of their counsel, the claim number, index number, venue (*i.e.*, arbitration or civil litigation and, if civil, which state court), and the amount in controversy. (*See* Litigation/Arbitration Run Chart, attached as Ex. 3 to Decl. of Kathy Asmus dated May 19, 2021, Dkt. No. 26-8). Attached to GEICO's renewed motion is a chart with the same categories above, but it also identifies the approximate filing date of each action, whether an arbitration hearing or trial date is set and, if so, the scheduled date. (*See* Pending Litigation & Arbitration Chart, attached as Ex. 3 to Decl. of Kathy Asmus dated Apr. 19, 2022, Dkt. No. 34-8). This additional information allows the Court to assess

5

the status and procedural posture of the proceedings—including whether they are ongoing or have resolved—as well as the extent to which the Defaulting Defendants have continued to pursue collection of unpaid claims since this federal action began. GEICO also supplied a declaration from an employee attesting that "the amount of unpaid claims that now are actively in dispute . . . is $1,292,569.98, of which approximately $183,164.71 is currently" pending across 108 active and discrete collection actions.[1] (Decl. of Kathy Asmus dated Apr. 19, 2022 ("Asmus Decl."), attached as Ex. D to Second Mot., ¶ 10; Pending Litigation & Arbitration Chart).[2] Of those 108 actions, 51 are actions in state court; 57 are in arbitration proceedings. (*See* Pending Litigation & Arbitration Chart).

As to the $183,164.71 in claims that are currently in litigation, not only is there a practical likelihood of a controversy between the parties, in fact, such a controversy already exists. It is axiomatic that a case or controversy exists in such a situation. *E.g.*, *Allstate Ins. Co. v. Harvey Fam. Chiropractic, Physical Therapy & Acupuncture, PLLC*, No. 15-CV-07149, 2018 WL 8544440, at *19 (E.D.N.Y. Sept. 21, 2018) ("Plaintiffs here have provided affidavits showing that defendants have submitted numerous outstanding No-fault claims to Allstate, and that defendant Harvey FCPTA hired counsel

---

[1] These figures differ from those set forth in Ms. Asmus's declaration submitted in support of GEICO's first motion. At that time, there were 117 pending actions with a total of $1,428,386.52 unpaid claims in dispute. (Decl. of Kathy Asmus dated May 19, 2021, attached as Ex. D to Pls.' First Mot. for Default J., Dkt. No. 26 ¶ 11). The amount of unpaid claims in dispute is calculated by taking the total number of claims submitted to GEICO, and deducting the voluntary payments shown in the TIN Run as well as involuntary payments made in connection with the underlying collection suits and arbitrations. (*Id.* ¶ 11 n.1).

[2] The Asmus Declaration states that there are 106 pending actions, (*see* Asmus Decl. ¶ 10), but the total number of actions in the chart is 108.

6

to pursue collection of those outstanding claims. At least 137 of these No-fault claims have not been stayed, and thus plaintiffs may be forced to continue to litigate the validity of these fraudulent No-fault claims. Other cases are currently being litigated in state court, requiring the continued expenditure of fees and costs. Plaintiffs are entitled to a declaratory judgment that they are under no obligation to pay any of Harvey FCPTA's No-fault claims for reimbursement[.]").

As to the balance of the nearly $1.3 million in claims, there is a "practical likelihood that the triggering event will occur." That is, there is a practical likelihood that the Defaulting Defendants will sue to force GEICO to pay these unpaid claims. It appears that past is prologue. Plaintiffs have hired, and continue to hire, legal counsel to bring these actions, which GEICO is in turn "forced to defend." (*See* Pending Litigation & Arbitration Chart; GEICO's Mem. of Law in Supp. of Second Mot. ("GEICO's Mem."), attached as Ex. 10 to Second Mot., at 22). The Defaulting Defendants have continued to file actions against GEICO seeking reimbursement, even after January 19, 2022, when the Court recommended that they be found liable for fraud. (*See* Pending Litigation & Arbitration Chart). They also continue their litigation activity. The Defaulting Defendants filed 45 new collection actions in 2021 and 34 actions in 2022, all of which post-date the filing of the Complaint. (Asmus Decl. ¶ 10). Indeed, one of the actions listed was begun April 11, 2022, just 9 days before the present motion for declaratory relief was filed. (*See* Pending Litigation & Arbitration Chart at 2). And the "mere fact" that litigation has not yet commenced over all the submitted claims is "insufficient to justify concluding that there is no justiciable 'case of actual controversy.'" *Admiral Ins. Co.*, 57 F.4th at 95 (quoting 28 U.S.C. § 2201(a)).

7

In light of the foregoing, and because GEICO has reiterated it has no intention of paying reimbursement of any of the pending claims submitted by the Defaulting Defendants, (Compl. ¶¶ 343–48 (alleging the Defendants "have no right to receive payment for any pending bills submitted to GEICO")), the Court finds there is an "actual controversy." *See, e.g.*, *Gov't Emps. Ins. Co. v. Li-Elle Serv., Inc.*, No. 12-CV-2157, 2014 WL 1154244, at *1–*2 (E.D.N.Y. Mar. 21, 2014) (granting GEICO's renewed motion seeking a declaratory judgment where it submitted supplemental materials outlining the status of Li-Elle's collection actions, including the trial dates for the ninety-seven lawsuits Li-Elle initiated in New York City Civil Court to recover a total of $94,278.09). And as such, the Court has jurisdiction to enter a declaratory judgment relating to the entire set of pending claims submitted by the Defaulting Defendants.

Whether the Court has jurisdiction to hear a claim for declaratory relief is separate from whether it should exercise its discretion to do so, and separate still, from the question of whether having exercised such jurisdiction, the declaratory relief should be granted.[3] *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 106 n.7 (2d Cir. 2012) ("[W]hether the district court should have exercised jurisdiction . . . is distinct from the remedial question of whether the district court should grant declaratory relief on those claims under the [DJA].").

As to the first question, in a stand-alone DJA action—that is, one where there is no other claim or basis for jurisdiction—a district court has "'broad discretion' to decline

---

[3] The two are, of course, related, for it makes no sense to exercise discretion to hear a declaratory judgment action, and then proceed to deny the relief on the merits. "If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon that court to proceed to the merits before staying or dismissing the action." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

8

jurisdiction." *Admiral Ins. Co.*, 57 F.4th at 99 (quoting *Niagara Mohawk Power Corp.*, 673 F.3d at 106 n.7). In such a case, a number of factors, so long as relevant, "should inform a district court's exercise of such discretion," *id.*, including whether such a judgment would serve a useful purpose, be only a vehicle for procedural maneuvering, or displace a more effective remedy in another forum. *See Niagara Mohawk Power Corp.*, 673 F.3d at 105. These factors—articulated following the Supreme Court's decision in *Wilton*, which held that "[t]o avoid wasteful and duplicative litigation, district courts may often dismiss declaratory judgment actions where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties," *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998) (quotations omitted)—have their roots in the same interests that animate federal abstention, and have no relevance here. This is not a stand-alone declaratory judgment action, but one where GEICO has sought, and the Court has awarded, damages and other relief. *Niagara Mohawk Power Corp.*, 673 F.3d at 106; *Kanciper v. Suffolk Cnty. Soc. for the Prevention of Cruelty to Animals, Inc.*, 722 F.3d 88, 93 (2d Cir. 2013); *Vill. of Westfield v. Welch's*, 170 F.3d 116, 124 n.5 (2d Cir. 1999) ("[T]he Supreme Court held in *Wilton v. Seven Falls Co.*, that a discretionary standard . . . governs a district court's decision to stay a declaratory judgment action on grounds of a parallel state court proceeding. *Wilton* does not apply here. Although Welch did seek a declaration of rights . . . , the federal action did not seek purely declaratory relief. Rather, the Village sought payment of the unpaid user charges against Welch. Welch, in turn, contested the payment and sought damages caused by the Village's conduct." (citations omitted)).

    And as to the latter question, whether the broad relief of a declaratory judgment should be granted, the "[e]quitable discretion as to whether a declaratory remedy should

9

be granted is best exercised after a fuller record has been developed." *Niagara Mohawk Power Corp.*, 673 F.3d at 106 n.7. There is no additional record that could be developed in this case. The Defendants have defaulted; they have been found liable for fraud. Since that finding, the filing of claims has continued unabated. (Compl. ¶¶ 9, 47; *see also* Asmus Decl. ¶ 10). There is little to nothing in this unopposed record to suggest that the remedy of declaratory relief is inappropriate.

## CONCLUSION

For the reasons described above, the undersigned respectfully recommends the motion for default judgment be granted, and the Clerk of Court enter a declaratory judgment providing the Defaulting Defendants have no right to receive payment for any unpaid claims submitted to GEICO, consistent with the proposed order attached as Exhibit E to GEICO's motion.

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of service of this report. Failure to file objections within the specified time may waive the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *see also Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate[ ] [judge's] report operates as a waiver of any further judicial review of the magistrate[ ] [judge's] decision." (quotations omitted)).

Plaintiffs are directed to serve a copy of this Report and Recommendation on the Defaulting Defendants and file proof of such service on the record.

SO ORDERED.

<u>/s/ *Sanket J. Bulsara*  February 9, 2023</u>
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York